UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ELIZABETH A. MILLER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-685 (RMU) |
| | : | | |
| v. | : | Document No.: | 7, 8 |
| | : | | |
| DEPARTMENT OF THE NAVY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff, Lieutenant Commander ("LCDR") Elizabeth Miller, is an active duty officer in the Judge Advocate General ("JAG") Corps in the United States Navy. Pl.'s Compl. ¶ 3. The plaintiff brings this case against her employer, Department of the Navy, challenging the Secretary of the Navy's decision not to convene a Special Selection Board ("SSB") to reconsider a prior personnel determination to not promote her from Lieutenant Commander to Commander. Additionally, the plaintiff seeks an unredacted Navy Bureau of Personnel Inspector General ("BUPER IG") investigation report, which was generated following an investigation into personnel decision not promoting her. Because the plaintiff has failed to demonstrate that the Secretary of the Navy's decision not to convene a SSB was not arbitrary and capricious, not based on substantial evidence, not a result of material error of fact or material administrative error and not otherwise contrary to law, the court grants the defendant's motion for summary judgment as to plaintiff's discrimination claim. Because the redactions made to the BUPERS IG

1

investigation report were consistent with the Freedom of Information Act ("FOIA") and the Privacy Act ("PA"), the court grants the defendant's motion for summary judgment as to this claims.

## II.  BACKGROUND

In 2002, 2003, and again in 2004, the Department of Navy's promotion selection board (FY-02 Board, FY-03 Board, FY-04 Board respectively) considered the plaintiff for a promotion to the Commander rank.[1]  The plaintiff was not selected for a promotion by any of those boards. Def.'s Opp'n at 2.  On June 19, 2002, the plaintiff requested that the Secretary of the Navy convene a SSB to reconsider the FY-02 Board's decision to not promote her, alleging that the Board's decision was materially unfair.  Pl.'s Mot. at 2-3.  In support of this request, the plaintiff claimed that a particular board member (1) violated his oath in speaking to the plaintiff about board deliberations, (2) improperly "considered men and women differently and as if they were not competing against each other, but rather just competing within their own gender" and (3) disregarded the "precept's guidance on how to consider consecutive tours in the same geographic area."  Pl.'s Mot., Ex. 1, 3-4.  The Chief of Naval Personnel ("CNP"), pursuant to advice from the Navy Personnel Command Legal Counsel, directed the BUPER IG to conduct an investigation into these allegations.  Administrative Record ("Admin. R.") at 7-8.[2]  The written results of the BUPER IG investigation (titled a "Completion Report") as well as a memorandum

---

[1]  The pertinent statute states that "the Secretary [of the Navy], whenever the needs of the service require, shall convene selection boards to recommend for promotion to the next higher permanent grade [...] officers on the active-duty list in each permanent grade from [...] lieutenant (junior grade) through rear admiral (lower half) in the Navy.  10 U.S.C. § 611 (a).

[2]  Page citations to the administrative record reference the bates stamp numbers, correlative to the entire administrative record rather than the internal page numbers of the documents located therein.

2

from the CNP outlining the investigation and providing conclusion and recommendations, was forwarded to the Secretary of the Navy. The BUPER IG found that the portion of LCDR Miller's allegation "that [REDACTED] violated his oath is **substantiated**. The remainder of the allegation (that the Board ignored the precept guidance and that [the board member] had a gender bias that influenced the outcome of the Board) is **unsubstantiated**." Administrative R. at 23 (emphasis in original). The Completion Report stated that "there is insufficient justification to approve LCDR Miller's request for a special selection board." *Id.* at 24.

From this, the CNP concluded that

> [t]he fact that LCDR Miller was not selected appears to be more a factor of her failure to perform at a consistently outstanding level and to perform in arduous duty assignments rather than a board with a gender bias . . .
>
> Based on the evidence cited during the investigation, the BUPER[] IG could not find any proof of any material error of fact or any material administrative error committed by the members of the FY02 Active Duty Commander JAG Selection Board.[3]

*Id.* at 10. Thus, the BUPER IG recommended that the

> SECNAV disapprove LCDR Miller's request for a Special Selection Board based on the fact that there does not appear to have been any material error of fact or material administrative error that likely deprived LCDR Miller of a fair and impartial consideration by the FY02 Active Duty Commander JAG Board.

*Id.* at 24.

Consistent with the recommendation of the BUPER IG and the CNP, on July 23, 2003, the Secretary of the Navy denied LCDR Miller's request to convene a SSB. By letter dated

---

[3] Secretary of Navy Instruction 1041.1B "authorizes convening of a special selection board when [the Secretary of the Navy] determines that an officer was not recommended for promotion by a promotion selection board as an in-zone or above-zone eligible because the action of the promotion selection board involved material error of fact or material administrative error. It further defines a material error as any error of fact or administrative/procedural error that is more likely than not to have deprived the officer concerned of a fair and impartial consideration by the board." Admin. R. at 10.

3

August 11, 2003, Miller was notified that the Secretary of the Navy denied her request.  The notification stated that LCDR Miller's "record before the selection board was considered complete and presented a substantially accurate and fair portrayal of [her] Naval career. [Her] record was treated fairly and impartially in accordance with SECNAV policy and Title 10." *Id.* at 1.

On April 16, 2003 and again on August 15, 2003, the plaintiff submitted a Freedom of Information Act ("FOIA") and Privacy Act ("PA") request for a copy of the "BUPER IG Report 2002-15." Pl.'s Mot., Ex. 5.  On August 22, 2003, the Navy released a redacted copy of the BUPER IG report to LCDR Miller with a cover letter from the Navy Personnel Command explaining the redactions made and the justifications for them.  Pl.'s Mot., Ex. 6.  The plaintiff subsequently filed a FOIA/PA appeal with the Navy, claiming that the Navy "appeared not to have analyzed the redactions in light of the PA, and that the public interest in proper functioning of the Navy's promotion system and its ability and willingness (or lack thereof) to investigate outweighed whatever slight compromise of others' personal privacy might have flowed from release of the entire document." Pl.'s Mot. at 3-4 & Ex. 7.  The Office of the Judge Advocate General denied the appeal, stating that the PA did not require release of an unredacted copy because "[t]he Privacy Act applies only to documents maintained in a system of records . . . the [BUPER IG] report requested is not maintained in a Privacy Act system of records because it is not retrieved by any individual's name or by any identifier unique to an individual person." Pl.'s Mot., Ex. 8 at 2.  Additionally, the Office of the Judge Advocate General determined that the redacted information was correctly withheld because it constituted "names and other personal identifiers of those providing information to investigative bodies," which may be withheld "on a categorical basis." *Id.* at 1 (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the*

4

*Press*, 489 U.S. 749 (1989)).

The plaintiff makes two distinct claims in the present action. First, the plaintiff challenges the Secretary of Navy's decision to not convene a SSB, claiming that the decision was arbitrary and capricious, not based on substantial evidence based on the whole record, a result of material administrative error, and otherwise contrary to law. Compl. ¶¶ 25-26. Second, the plaintiff challenges the Navy's partial denial of her FOIA request for the BUPER IG report. *Id.* at ¶¶ 27-28. The plaintiff demands that an SSB be convened to reconsider the FY-02 Selection Board's decision not to promote Miller, and that the Navy provide her an unredacted copy of the BUPER IG report. Both parties filed motions for summary judgment. The court now addresses these motions.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Review of Secretary of Navy Decision

### 1. Legal Standard for Judicial Review of Military Agency Action

In reviewing a determination of the Secretary of a military department, the court "may set aside the Secretary's determination only if the court finds the determination is – (i) arbitrary and capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law." 10 U.S.C. § 628(g)(1)(A) (2005). "Adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *see also Guy v. United States*,

608 F.2d 867 (Ct. Cl. 1979) (holding that the court cannot upset the non-promotion determination of the agency officials absent "clear, legal entitlement to it," because "[p]romotion under the selection board system results from the exercise of discretionary functions reserved for the Executive branch"). The court must employ a "highly deferential application of the 'arbitrary and capricious standard' of the Administrative Procedures Act . . . to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence," *Cone v. Caldera*, 223 F.3d. 789 (D.C. Cir. 2000) (citing *Kreis*, 866 F.2d at 1511).

The Secretary must "give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA.[4] Perhaps only the most egregious decisions may be prevented under such a deferential standard of review. Even if that is all the judiciary can accomplish, in reconciling the needs of military management with Congress's mandate for judicial review, then do it we must; it is not for us but for Congress to say whether the game is worth the candle." *Kreis*, 866 F.2d at 1514-1515.[5]

---

[4] The APA provides that a reviewing court shall compel agency action when that action is deemed
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
5 U.S.C. § 706. The applicable statute in the instant case is 10 U.S.C. § 628, which largely echoes the standard found in the APA. *See Homer v. Roche*, 226 F. Supp. 2d 222 (D.D.C. 2002).

[5] In 2001, Congress amended § 628, adding subsection (g), which provides for judicial review of decisions of special selection boards. 10 U.S.C. § 628 (g). The 2001 amendment "clarified the law more than it changed it," and did nothing to upset the substantive analysis provided in *Kreis v.* 866 F.2d 158, to be employed in reviewing military actions. *Homer*, 226 F. Supp. 2d 222

## 2. The Plaintiff Fails to Demonstrate That the Secretary of Navy's Decision Should be Set Aside

The stated rationale of the Secretary of the Navy in denying the plaintiff's request to convene a SSB be convened, was based on the conclusion of the BUPER IG investigation that she was "treated fairly and impartially in accordance with SECNAV policy and Title 10." Admin. R. at 1.  For the court to determine whether the decision of the Secretary of the Navy was arbitrary and capricious, not based on substantial evidence, a result of material error of fact or material administrative error, or otherwise contrary to law, the court must evaluate the underlying BUPER IG investigation and conclusions.  The court's task, however, is not to place itself in the shoes of the Secretary of the Navy and make an independent determination, but rather to determine whether the Secretary of Navy's determination comports with 10 U.S.C. § 628.  *See Kreis,* 866 F.2d at 1513 (holding that "[t]he Secretary, acting through the Board, 'may correct any military record of that department when he considers it necessary to correct an error or remove an injustice' . . . not simply when such action is necessary to correct an error or to remove an injustice"), *see also Homer*, 226 F. Supp. 2d at 225-226 (stating that the "role of the courts engaged in such review is limited, but important: 'only that the agency exercise its discretion in a reasonable manner, but defers to the agency's ultimate substantive decision.'" (quoting *Kreis*, 866 F.2d at 1512)).

Following the plaintiff's allegation that the selection board acted improperly, the Department of the Navy initiated an administrative review by way of a BUPER IG investigation. The BUPER IG interviewed Miller, the subject board member and four other JAG officers. Admin. R. at 13.  Additionally, the BUPER IG reviewed two documents pertaining specifically

to the FY02 Promotion Selection Board[6] and four documents regarding Navy regulations and procedures for promotions.[7]  *See Id. & Id.* at 14.  The BUPER IG concluded that the claims that the board member "violated his oath" by speaking to Miller, is **substantiated**, but found that the "remainder of the allegation (that the Board ignored the precept guidance and that he had a gender bias that influenced the outcome of the Board) is **unsubstantiated**."  *Id.* at 23 (emphasis in original).  These findings indicate, at least facially, that the BUPER IG conducted a thorough and complete review.

The gravamen of the plaintiff's claims, vis-à-vis the Secretary of Navy's denial of her request that a SSB be convened, is that she was subjected to gender based discrimination by a board member of the selection committee.  Pl.'s Mot. at 4-7.  In support of this claim, plaintiff cites *Service v. Dulles*, 354 U.S. 363 (1957) and *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987), both of which stand for the general proposition that government agencies must comply with the Constitution and statutes and regulations, even if those regulations go beyond what the Constitution or the statutes may require.  It is plaintiff's contention, therefore, that she is entitled to summary judgment on this basis.  For two reasons, the court cannot agree.

First, the plaintiff's claim is based solely on her allegation that a board member made certain statements to her.  But, the board member denies making these statements, and the BUPER IG found the plaintiff's allegation in this regard to be unsubstantiated.  Admin. R. at 2-5.

---

[6]  The documents listed in the BUPER IG report are (1) "SECNAV letter of 16 April 2001; Precept convening FY02 Promotion Selection Board To Consider Officers In The Judge Advocate General's Corps On The Active-Duty List Of The Navy For Promotion To The Permanent Grade Of Commander," and (2) "FY02 Active Duty Commander JAG Selection Board Tank Records."

[7]  The documents listed in the BUPER IG report are (1) "SECNAVINST 1420.1A; Promotion And Selective Early Retirement Of Commissioned Officers On The Active Duty Lists Of The Navy And Marine Corps," (2) "SECNAVINST 1401.1B; Special Promotion Selection Boards For Officers On The Active-Duty Lists And Warrant Officers On Active Duty In The Navy And Marine Corps," (3) "US Navy Regulations, Article 1137," and (4) "Manual for Courts-Martial."

The potential that this statement was made, without more, does not rise to the level of a substantiated claim sufficient to survive summary judgment. *Anderson*, 477 U.S. at 252 (holding that the party must establish more than "the mere existence of a scintilla of evidence" to support its position.)  This much the plaintiff has not done.  A plaintiff's allegation that something occured, without more, does not a legally claim make.  *See Greene*, 164 F.3d at 675.  Additionally, the court is not in a position to entertain this claim, but is tasked solely with determining whether the Secretary of the Navy complied with the discretion granted him to convene an SSB under 10 U.S.C. § 628.  Second, even if the court were to consider the plaintiff's allegation that the board officer made a specific gender based statement to her as true, that allegation was thoroughly inspected and found to be unsubstantiated by the BUPER IG.  The Secretary of Navy's reliance thereupon can hardly be deemed arbitrary or capricious.  *See generally Kreis*, 866 F.2d 1508.  Third, the plaintiff provides no argument whatever to suggest that the SECNAV's decision to not convene the SSB, in reliance on the BUPER IG conclusions and recommendation, constitutes action reversible by the court under 5 U.S.C. § 628.

Without any argument from the plaintiff to the contrary, the plaintiff fails to establish that the Secretary of Navy's actions, in affirming the recommendation of BUPER IG, were arbitrary or capricious, were not based on substantial evidence, were a result of material error of fact or material administrative error, or were otherwise contrary to law. *See Greene*, 164 F.3d 675 (holding that allegations or conclusory statements are insufficient to survive summary judgment).

### C.  FOIA REQUEST

#### 1.  Legal Standard for Review of FOIA Request

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure.  5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d

820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA. 5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). An agency may meet this burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the exemption's relevance. *Summers*, 140 F.3d at 1080; *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn* index").

> The court may grant summary judgment to an agency on the basis of its affidavits if they:
>
> [(a)] describe the documents and the justifications for nondisclosure with reasonably specific detail, [(b)] demonstrate that the information withheld logically falls within the claimed exemption, and [(c)] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

The Privacy Act of 1974 "safeguards the public from unwarranted collection, maintenance, use, and dissemination of personal information contained in agency records... by allowing an individual to participate in ensuring that his records are accurate and properly used." *Blazy v. Tenet*, 194 F.3d 90, 96 (D.C. Cir. 1996) (citing *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C.

Cir. 1984). The primary purpose of the Privacy Act is to "allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Henke v. United States Dep't of Commerce*, 83 F.3d 1453, 1456-57 (D.C. Cir. 1996).

### 2. The Plaintiff's FOIA Requests

On April 16, 2003 and August 13, 2003, the plaintiff requested a copy of the BUPER IG report that was prepared following the investigation into the plaintiff's non promotion. In response to this request, the defendant sent the plaintiff a redacted version of the report. Admin. R. at 12-27. The plaintiff objects to the redactions made and seeks an unredacted version of the report. The redacted information falls into three general categories: (a) personal identifying information about the investigators, the subject of the investigation, and witnesses; (b) information about the proceedings of LCDR Miller's promotion board, and (c) the recommendations of the investigating officer. *See* Def.'s Mot., Ex. 2., (Hester Decl. at ¶ 8).

### a. Personal Identifying Information

### i. Legal Standard for FOIA Exemption 6

Exemption 6 of FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "[S]imilar files" are broadly defined to include any "[g]overnment records on an individual which can be identified as applying to that individual." *See U.S. Dept. of State v. Wash. Post Co.*, 456 U.S. 595, 601-602 (1982). To determine whether a disclosure would constitute a clearly unwarranted invasion of personal privacy, the court must weigh the privacy interests in nondisclosure against the public interests in disclosure. *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (citing *Nat'l Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  Individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature.  *See Wash. Post*, 456 U.S. at 600 (stating that "information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet ... such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy").  The quantum of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law.  *Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C. Cir. 1991).  In assessing the public interest, the court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny . . . [and official] information that sheds light on an agency's performance of its statutory duties" merits disclosure.  *Reporters Comm.*, 489 U.S. at 773 (citation omitted).  The purposes of FOIA are "not fostered," however, "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Id.

### ii. The Court Denies Plaintiff's FOIA Request Regarding Personal Information[8]

The first type of information withheld from disclosure by the defendant is information concerning personal identifying information about the investigators, the subject of the investigation, and witnesses. Def.'s Mot. at 21. Specifically, Hester, an attorney advisor for the Department of the Navy, indicates that

> [t]he released report details the findings of an investigation that was triggered by Lieutenant Commander Miller's allegations that a naval officer had acted contrary to law. Prior to releasing the report to Lieutenant Commander Miller, the IDA redacted the name of the accused officer as well as uniquely identifying information that would have revealed the identity of that officer.

Hester Decl. at ¶ 10. Hester further provides the specific locations within the BUPER IG report wherein these redactions were made, and that the redactions prevent the disclosure of names and uniquely identifying personal information. *Id.*

---

[8] Alternatively, the defendant claims that the information is properly withheld under Exemption 7(c) to FOIA. The court agrees. This Circuit has determined Exemption 6 and Exemption 7(c) of FOIA to be essentially the same. *Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004). Nevertheless, the tests for each are slightly different. Exemption 7(c) to FOIA exempts from disclosure information that "could reasonably be expected to constitute an unwarranted invasion of personal property." 5 U.S.C. § 552 (b)(7)(C). Unlike information withheld under Exemption 6, the "categorical withholding" of information identifying third parties in law enforcement records will ordinarily be appropriate under Exemption 7(c). *See SafeCard Serv.*, 926 F.2d at 1197. As previously discussed, the information redacted concerns personal identifying information of witnesses, the accused, and other investigation participants. Because "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," individuals have a strong privacy interest in avoiding unwarranted association with alleged criminal activity. *Fitzgibbon*, 911 F.2d at 767. The plaintiff's arguments for Exemption 7(c) are identical with those for Exemption 6. *See* Pl.'s Mot. at 10. These arguments for disclosure are not persuasive. First, unsubstantiated allegations of wrongdoing, as has been found here by the BUPER IG, are insufficient to establish a public interest in disclosure. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1492-94 (D.C. Cir. 1993) (holding that there is no public interest in disclosure of alleged wrongdoing absent any evidence of that wrongdoing or widespread publicity of investigation). Second, the court's balancing of private interest in privacy against the public interest in disclosure under its Exemption 6 analysis clearly augurs for the propriety of withholding under Exemption 7(c), where the standard to justify withholding is lower. *See Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (ruling that "[p]ersons involved in [agency] investigations – even if they are not the subject of the investigation – 'have a substantial interest in seeing that their participation remains secret'") (quoting *Fitzgibbon*, 911 F.2d at 767); *see also SafeCard*, 926 at 1197.

The plaintiff argues that "[n]othing in this record suggests that the personal privacy of anyone other than the plaintiff is at all at issue." Pl.'s Mot. at 10. The court cannot agree. According to the Hester declaration, the information redacted pertains specifically to personal identifying information of the witnesses, accused, and investigator and staff, all of which is protected from disclosure under Exemption 6 to FOIA. *See Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990); *See David v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)*; See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 478 (D.C. Cir. 1980). The precise locations of the redactions within the administrative record suggest that basic personal identifier information has been redacted. For example, the BUPER IG report contains a redaction as follows: "LCDR Miller alleged that [REDACTED] initiated a conversation with her" Admin. R. at 13. While the plaintiff is certainly aware of the names of these individuals, given that she was a direct participant in the proceedings, because these individuals were involved in an internal investigation of potentially illegal activity, their privacy interests are certainly implicated. *Wash. Post*, 456 U.S. at 600. Against the privacy interest involved in protecting identifying information of these individuals, the court must weigh the public's interest in having the information. The plaintiff contends that the disclosure of this information "touches and concerns not only the public interest in selecting the highest caliber of naval officers but also the equally compelling public [sic] in providing a level quarterdeck for women in the Navy officer corps." Pl.'s Mot. at 11. The plaintiff has not cited any authority to support this sweeping legal proposition. Surely the public has an interest in "[o]fficial information that sheds light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 773 (citation omitted). The plaintiff fails to demonstrate, as is her burden, how the redaction of the names and personal identifying information of the investigation participants divest the public of that interest. *See Carter v. U.S.*

*Dep't of Commerce*, 830 F.2d 388, 390-391 (D.C. Cir. 1987) (explaining that the plaintiff bears the burden of demonstrating to the court that disclosure is in the public interest). To the contrary, information containing personal identifying information "reveals little or nothing about the agency's own conduct." *Reporters Comm.*, 489 U.S. at 773.

### b. Information Regarding the Promotion Board Proceedings

### i. Legal Standard for FOIA Exemption 5

Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). In other words, Exemption 5 incorporates "all civil discovery rules." *Martin*, 819 F.2d at 1185. Thus, all discovery privileges that exist in civil discovery apply to Exemption 5. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984). The three traditional privileges that courts have incorporated into Exemption 5 are the deliberative process privilege, the attorney work product privilege and the attorney client privilege. *Sears*, 421 U.S. at 149. The defendant invokes the deliberative process protection in support of its redactions.

The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. The three specific policy objectives underlying this privilege are: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might

result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's action. *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). In essence, the privilege protects the "decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears*, 421 U.S. at 150 (internal quotations omitted). Thus, the deliberative process ensures that government agencies are not "forced to operate in a fishbowl." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

      To invoke the deliberate process privilege, the defendant must demonstrate that the withheld information has two characteristics. *Id.* First, the information must be "predecisional," in other words, it must be "antecedent to the adoption of an agency policy." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative-process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868. In other words, as long as a document is generated as part of such a continuing process of agency decision making, the deliberative process protections of Exemption 5 may be applicable. *Id.*; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made). Second, the communication must be deliberative; it must be "a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 823-24. The critical factor in determining whether the

17

material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).

### ii. The Court denies Plaintiff's FOIA Request Regarding Proceedings of the Selection Board

The government argues that, because the proceedings of the selection board are intra-agency proceedings concerning the decision making process of that administrative body, the deliberative process privilege applies. *Id.* The court agrees.[9] The foremost policy basis recognized in support of the deliberative process privilege is to encourage open, frank discussions on matter of policy between subordinates and superiors. *See Russell*, 682 F.2d at 1048. Documents "reflecting advisory opinions, recommendation and deliberations comprising part of a process by which governmental decisions and policies are formulated," precisely the character of the closed deliberations of the selection board proceedings, fall squarely within the deliberative process inquiry. *Sears*, 421 U.S. at 149.

---

[9] Alternatively, the defendant claims that the information is properly withheld under Exemption 3 to FOIA, which exempts from disclosure information that is "[s]pecifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The defendant claims that via operation of FOIA Exemption 3, 10 U.S.C. § 618(f) justifies the redaction of information pertaining to proceedings of the promotion board. Section 618(f) provides that [e]xcept as authorized by this section, the proceedings of a selection board convened under section 611(a) may not be disclosed to any person not a member of the board." 10 U.S.C. § 618(f). Although the statute does provide for limited circumstances in which information regarding the proceedings can be disclosed internally, nothing in the statute provides for disclosure to the public of the information, nor discretion by the Secretary of the Navy to create such an exception. *In Re England*, 375 F.3d 1169, 1177-1178 (D.C. Cir. 2004). The plaintiff provides the court with no reason to reexamine the obvious – that the information withheld, pertaining specifically to proceedings of the selection proceeding, clearly falls within 10 U.S.C. § 618(f), and therefore, is exempt from disclosure per Exemption 3 to FOIA.

The second category of information withheld by the Navy from the BUPER IG report is information pertaining specifically to the proceedings of the FY-02 Board.  In conducting this investigation, "the investigating officer analyzed the records from each tank session ["Tank," in this context refers to a specific session of the promotion board.  The board typically will conduct several tank sessions, and a particular candidate's qualifications may be considered in several "tank" sessions.  Hester Decl. at ¶ 17.] and the decisions made in those tank sessions about which records would continue to the next tank session."  Hester Decl. at ¶ 17.  The defendant redacted this information after concluding that it was exempt from disclosure by Exemptions 3 and 5 to FOIA.  *Id.* at ¶ 16, 18.

### c. Information Pertaining to the Recommendations of the Investigating Officer was Properly Withheld

The third category of information redacted from the BUPER IG is that which, according to the defendant, contains "recommendations of the Chief of Naval Personnel about whether further criminal investigation or action against certain individuals was warranted and should be pursued."  Hester Decl. at ¶ 19.  It is defendant's claim that this information qualifies under Exemption 5 to FOIA, as clearly constituting a "recommendation[] comprising part of a process by which governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (internal quotations omitted).  Because the recommendations were generated "intra-agency," *see* 5 U.S.C. § 552(b)(5), because the plaintiff has offered neither evidence nor argument to the contrary, and in the interest of fostering opened and frank agency discussions, deliberations, and decisions, *see Russel*, 682 F.2d at 1048, the court agrees.

## IV.  Conclusion

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued on issued on this ___ day of August, 2005.

>                                         RICARDO M. URBINA
>                                         United States District Judge